## THOMPSON v. FAMOUS PLAYERS–LASKY CORPORATION et al.

(District Court, N. D. Georgia. February 3, 1925.)

### No. 313.

Literary property ⬡2—Scenario of photoplay is property entitled to protection in equity.

A scenario and synopsis for a photoplay, until dedicated to common use by publication, is at common law private property of the author, and is entitled to protection by a court of equity against piracy.

In Equity. Suit by Mrs. Mattie Thomas Thompson against the Famous Players–Lasky Corporation and others. On motion by defendants to dismiss bill and cancel bond given to prevent injunction. Denied.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for petitioner.

Alfred S. Barnard, of Atlanta, Ga., for defendants.

SIBLEY, District Judge. The bill was filed in the state court seeking to enjoin the production of a photoplay to place the films thereof in the hands of a receiver, and for an accounting of profits, on the ground that the photoplay was pirated from an uncopyrighted scenario and synopsis written by the petitioner. A partial injunction was granted ex parte, then a bond substituted without prejudice to any right of defendant, and the case removed to this court.

A motion to dismiss and to dissolve the bond given has been made chiefly on the ground of no equity in the bill. The main contention is that a scenario and synopsis for a photoplay is not a finished literary production, protected by the common law, and, if so, that the remedy here should be a suit for damages at law, and not the relief sought. A brief, but satisfactory, treatment of literary property at common law will be found in 25 Cyc. 1489. On both English, state, and federal authority it is established that the products of intellectual labor, when brought to a concrete, finished form, and not dedicated by publication to common use, are at common law private property, and to be protected as such. This has been adjudicated, among other things, of dramas and architect's plans.

Of course, no photoplay scenario was known in olden days. But it requires time and effort to produce them. They have value to the writers, because they are sold by them, and to the producers of motion plays, because they buy them. Though the scenario is not written to be directly presented to the public, the sentences contained in and suggested by it are put upon the screen, and the remainder constitutes the stage directions to the screen actors. It is thus closely like a written drama, in which the action is as important as the words, and which contains, not only the sentences to be spoken, but directions as to the scenes and action. In the scenario the words are merely fewer, and the stage directions preponderant; or, if the scenario be construed a mere plan for a photoplay, it then has an analogy to the plans and specifications of an architect for a building, which are his until sold to a client or published to the world.

The bill here discloses that petitioner sent her work by mail to defendants for acceptance and purchase, and did not hear therefrom until this photoplay was exhibited, having the same name and plot as hers, and incidents and characters so closely resembling hers as to make it evidently not a mere coincidence. The bill sets forth a cause of action, and will not be dismissed for lack thereof. Injunction and an accounting in equity is a recognized form of relief in such cases. 25 Cyc. 1500. If on trial it appears that there was a willful and intentional pirating of petitioner's work, relief of that character might be appropriate; or if it should appear that more innocently the work which she sent has been put to the use that she intended, apparently a more just remedy would be to decree such a payment to her as she ought to have had, had her work been regularly accepted. Since she has always intended the publication in this manner of her scenario, no cause appears to enjoin it, except to protect her pecuniary rights. She already has a bond of $10,000 for this purpose. The answer, which is to be considered on the motion to dissolve this bond, denies many material allegations of the petition, but admits the production of a photoplay of the kind complained of, with no explanation of how the scenario followed was come by, though averring that it was not received from petitioner. The bond ought to stand until the matter is fully heard. A receivership for the films is not appropriate. The films do not belong to her, and accomplish no result to which she can now object.

The motion to dismiss and dissolve the bond are overruled.