WILLIAM B. SACHS, Respondent, *v.* CLUETT, PEABODY & CO., INC., Appellant.*

First Department, February 19, 1943.

*William Piel, Jr.,* of counsel (*Edward H. Green* and *Roy H. Steinheimer, Jr.,* with him on the brief; *Sullivan & Cromwell,* attorneys), for appellant.

*Elkan Turk* of counsel (*George Gaskill* with him on the brief; *Herman Goldman,* attorney), for respondent.

MARTIN, P. J. The complaint sets forth that the plaintiff developed a novel principle and novel machinery for use in the shrinking of fabrics, which principle and machinery he maintained in secrecy and which for the purposes of the complaint are referred to as the " Saxonizing Process."

In 1921, plaintiff entered into an agreement to disclose his process and exhibit his machinery to the defendant and the defendant promised " to treat the principle so disclosed and the machinery so exhibited in the strictest confidence and would make no disclosure or use thereof or any part thereof for its own use or benefit or for the use or benefit of any other person, firm or corporation, unless and until the plaintiff and the defendant would mutually agree on a basis of compensation which should be paid to the plaintiff by the defendant for and in respect to the use of said principle and said machinery or other machinery for utilizing said principle by the defendant and for or in respect to any other or different use or exploitation thereof by the defendant in and about its own business or in and about the business of others."

It is then alleged that pursuant to this agreement plaintiff did disclose the principle of the Saxonizing Process and exhibited the machinery to defendant; that the defendant in violation of the agreement aforesaid appropriated the principle and invention involved in the machinery and devised machinery which differed from the machinery of the plaintiff only in unessential details, obtained patents covering the machinery and has made use of the principle and machinery and licensed others to make use of plaintiff's principle and invention. The plaintiff demands an injunction, an assignment of the letters patent and an accounting of profits.

In support of a motion to dismiss the complaint on the ground that the plaintiff's cause of action is barred by the Statute of Limitations or for alternative relief striking out certain of the allegations of the complaint, defendant submitted the affidavit of Sanford L. Cluett, its vice-president, from which it appears that in 1929 defendant obtained patents covering the shrinking of cloth and machinery for carrying out the process, the invention of the said vice-president, who was head of defendant's

research department, and which process became known as the
" Sanforizing Process;" that the name " Sanforized " was reg-
istered in the Patent Office in 1930; that the development of the
Sanforizing Process was a major news event in the textile trade
and for more than ten years the Sanforizing Process has been
widely and permanently advertised; that the process has been
extensively licensed and as a result of publicity it has become
one of the best known products in the country.

The plaintiff maintains that he does not plead and need not
rely upon his contract but that he pleads upon a violation of a
confidential relationship. Broadly speaking, confidential rela-
tionship is synonymous with fiduciary relationship and the
equity text writers classify it under that heading. It exists
between trustee and *cestui que trust,* guardian and ward, attor-
ney and client, principal and agent or employer and employee
and generally where the parties do not deal on equal terms and
one trusts and relies on the other. Parties dealing at arm's
length, each seeking for himself the best advantage to be derived
from a transaction, are not in confidential relationship. The
recitals of the complaint indicate that prior to disclosure by
plaintiff of his secret there were negotiations between the parties
leading to the agreement relied upon and the rights and obliga-
tions of the parties are based on their contract.

The court at Special Term held that plaintiff is not seeking to
recover for breach of his 1921 agreement but for the continuing
violation and infringement of his property rights in the secret
process and in the trade name which he applied thereto. What
are plaintiff's property rights? In Nims on Unfair Competition
and Trade-Marks (3d ed.), section 141, it is said: " A secret may
be property, just as land is property; for money and other value
is often given in return for learning it. It somewhat resembles
the property one has in an unpublished manuscript."

In the same section there appears the following quotation from
*Tabor* v. *Hoffman* (118 N. Y. 30) : " Independent of copyright or
letters patent, an inventor or author has, by the common law, an
exclusive property in his invention or composition, until by pub-
lication it becomes the property of the general public."

Further in section 142, it is said: " There is no statutory pro-
tection of one who makes an article by a secret process or private
formula. He may have a property right in it, but he has no spe-
cial property right similar to the right of the owner of a patent
or copyright. His secret is valuable only because of its being a
secret, and only so long as he keeps it secret."

In *Cincinnati Bell Foundry Co.* v. *Dodds,* 19 Weekly Law Bulletin 84 (Ohio 1887) Judge TAFT, later Chief Justice of the Supreme Court of the United States, said: " The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears. There can be no property in a process, and no right of protection if knowledge of it is common to the world."

According to the allegations of the complaint, plaintiff's property right in his secret process ceased by the publication incident to the granting of the patents to defendant in 1929. In " A Study in the Law of Trade Secrets " by William B. Barton, 13 University of Cincinnati Law Review, 507, it is stated: " Since a patent amounts to publication, it follows that the right to rely on protection under the theory of trade secrets is lost forever upon the obtaining of a patent because the subject matter is no longer secret. * * * Once the trade secret has ' escaped,' unlike most things termed property, it cannot effectively be reduced to possession."

The plaintiff argues that, to the extent to which defendant's patents cover this process and the identical machine, the patents are void and do not exclude plaintiff from the use of his property, and that his rights survive all of the continuing wrong of the defendant undiminished by anything which the defendant has done. Despite this argument, plaintiff asks for an assignment of the patents. A continuing right may exist where there is an interference with but not destruction or conversion of property. This is aptly illustrated in the example set forth in the brief submitted on behalf of defendant: " If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date — or never."

In *Bristol* v. *Equitable Life Assurance Society* (132 N. Y. 264) it was said: " Without denying that there may be property in an idea, or trade secret or system, it is obvious that its originator or proprietor must himself protect it from escape or disclosure. If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure, otherwise it must follow the law of ideas and become the acquisition of whoever receives it. (*Peabody* v. *Norfolk,* 98 Mass. 452.) "

We read the complaint as alleging a cause of action for breach of the 1921 contract. The breach occurred and the statutory

period commenced to run not later than 1930 when, after obtaining letters patent in 1929, defendant registered in the patent office the name " Sanforized." This action was commenced in 1941 and is barred by the Statute of Limitations, whether the six- or ten-year period is applicable. It would not help plaintiff if defendant were considered as a trustee *ex maleficio* of the property which was the subject of the contract. As explained in *Hifler* v. *Calmac Oil & Gas Corp.* (258 App. Div. 78) the ten-year statute is applicable to such a situation and begins to run from the time when the wrong was committed by which the party became chargeable as trustee by implication which, in the case at bar, would be prior to 1930.

The allegations of the complaint concerning the use by defendant of the name " Sanforizing " are insufficient to support a cause of action for unfair competition with the name " Saxonizing."

The order appealed from should be reversed, with twenty dollars costs and disbursements and the complaint dismissed.

CALLAHAN, J. (concurring). I concur in the views expressed by the presiding justice, but desire to add what I believe to be additional grounds for reversal of the order appealed from.

It appears from the present complaint that plaintiff's alleged secret process was " disclosed to the public " over ten years before the commencement of this action. The complaint avers that defendant made the process public in various ways, in breach of a confidence which, by express agreement, it had undertaken to preserve. The complaint fails to show that plaintiff ever did anything to preserve his right of secrecy for almost fifteen years, although defendant during that time had obtained a patent on the secret process, and devoted it to the widest use. I think that defendant acquired a property right by this open, public and notorious use and possession of the process, under claim of right, for a period which, under the law, would bar an action for the recovery of property by the real owner. There is the rule as to tangible personal property (*Lightfoot* v. *Davis*, 198 N. Y. 261), and I see no reason why it would not apply to intangible personal property, and especially to property of the present nature which depends upon secrecy for its very existence. Under the circumstances any action for an alleged continuing injury to property, or for breach of confidence, would be nonexistent or barred by the Statute of Limitations in 1941, because (1) there could be no injury suffered by plaintiff to property which had been lost or destroyed, and (2) any causes of action against defendant for using or destroying plaintiff's property

accrued when the wrong was committed. The last date when such a wrong could have occurred herein would necessarily be at a time when plaintiff owned property in the secret process, which was more than ten years before the commencement of this action.

Assuming that plaintiff's property rights merged into the patent obtained by the defendant, such merger occurred when the patents were procured in 1929. Any cause of action for such conversion accrued at that time. Subsequent use under the patent would merely establish a possible basis for further damage.

In whatever light the complaint be considered, the cause of action pleaded therein would appear to be barred by the Statute of Limitations, and the motion to dismiss on that ground should have been granted.

TOWNLEY and DORE, JJ., concur with MARTIN, P. J.; concurring opinion by CALLAHAN, J.; COHN, J., dissents and votes to affirm.

Order reversed, with twenty dollars costs and disbursements, and the motion to dismiss the complaint granted.